## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

FREE STATE OF BAVARIA,
*represented by the* UNIVERSITY
OF WÜRZBURG,

                                        **:**

          **Plaintiff,**

                                        **Case No. 2:22-cv-2580**
   **v.**                                **Judge Sarah D. Morrison**
                                        **Magistrate Judge Chelsey M.**
                                        **Vascura**

THE OHIO STATE UNIVERSITY,   **:**
*et al.,*

          **Defendants.**

## OPINION AND ORDER

This matter is before the Court on the Motion to Stay Proceedings filed by Defendants Nationwide Children's Hospital, The Research Institute at Nationwide Children's Hospital, and Dr. Brian Kaspar. (Mot., ECF No. 69.) Therein, Defendants move to stay this Federal Action pending disposition of the related State Action before the Ohio Court of Claims, captioned *Free State of Bavaria,* represented by *The Univ. of Würzburg v. The Ohio State Univ.*, No. 2022-00495JD (Ohio Ct. Cl.). (*Id.*) Plaintiff Free State of Bavaria, represented by the University of Würzburg ("UW"), responded in opposition to the Motion (Opp., ECF No. 79), and Defendants replied (Reply, ECF No. 83).  For the reasons set forth below, Defendants' Motion is **GRANTED** and this Federal Action is **STAYED** until the State Action is fully and finally resolved. Further, Defendants' respective Motions to Dismiss (ECF Nos. 58, 59) are **DENIED without prejudice** to refiling after this stay is lifted.

UW 's motion for leave to file a sur-reply (ECF No. 80) is accordingly **DENIED as moot**.

## I.     FACTUAL BACKGROUND

Though the instant Motion does not seek a determination on the merits, the Court finds it helpful to briefly discuss certain facts underlying UW's claims. The following summary draws from the allegations in the operative First Amended Complaint (FAC, ECF No. 48).

### A.     The Parties

The University of Würzburg is a public university representing the Free State of Bavaria, the German state in which UW is situated. (*Id.*, ¶ 1.)  During the relevant period, Dr. Michael Sendtner worked for UW as a Professor of Clinical Neurobiology. (*Id.*, ¶ 13.)

Nationwide Children's Hospital and The Research Institute at Nationwide Children's Hospital (together, "NCH") are not-for-profit corporations located in Columbus, Ohio. (*Id.*, ¶¶ 3–4.) During the relevant period, Dr. Kaspar worked for NCH as a professor and medical researcher. (*Id.*, ¶ 5.)

The Ohio State University ("OSU") is a public university in Columbus, Ohio. (*Id.*, ¶ 2.) During the relevant period, Dr. Arthur Burghes worked for OSU as a professor and researcher. (*Id.*, ¶ 14.)

### B.     Researchers in Germany and Ohio bred genetically-altered mice for use in developing SMA therapies.

Spinal Muscular Atrophy ("SMA") is a genetic disorder that impacts the body's ability to create the survival motor neuron ("SMN") protein. (*Id.*, ¶¶ 38–39.)

2

It leads to the deterioration of physical function and is often fatal in early childhood. (*Id.*, ¶ 38.) Humans have two SMN genes: SMN1 and SMN2. (*Id.*, ¶ 39.) The SMN1 gene is missing or altered in SMA patients. (*Id.*)

To develop therapeutic treatments, researchers commonly create models of a human disease in mice. (*Id.*) This is difficult for SMA because mice only have one SMN gene, SMN1. (*Id.*, ¶ 40.) Therefore, in order to create a suitable model, researchers need mice whose genome 'deleted' the host-SMN1 gene and 'added' the human-SMN2 gene. (*Id.*) Drs. Sendtner and Burghes separately worked towards this goal during the late 1990s and early 2000s. (*Id.*, ¶¶ 41, 45.) Dr. Sendtner bred mice with a "knockout allele" that eliminated the host-SMN1 gene. (*Id.*, ¶ 41.) Around the same time, Dr. Burghes bred mice with the human-SMN2 gene inserted into the genome. (*Id.*, ¶ 45.) Dr. Sendtner and Dr. Burghes discussed their respective research and later collaborated to create a hybrid mouse model containing both Dr. Burghes' SMN2 gene as well as Dr. Sendtner's knockout allele. (*Id.*, ¶¶ 44, 46.)

By the early 2000s, UW wanted to allow other entities to use the hybrid mice. (*Id.*, ¶¶ 48–50.) To that end, UW alleges that it entered into an Agency Agreement with OSU, in which "OSU specifically committed not to distribute any mice containing Dr. Sendtner's knockout allele to any entity without first providing that entity with" UW's material transfer agreement ("MTA").[1] (*Id.*, ¶ 50.) The UW MTA

---

[1] MTAs are used to facilitate the transfer of tangible materials for research purposes. (FAC, ¶ 17.)

permits free use of any mice containing Dr. Sendtner's knockout allele for academic

and research purposes, but entitles UW to 10% of any profits resulting from

commercialization. (*Id.*, ¶¶ 48, 59.) According to UW, OSU also agreed to execute

the UW MTA if OSU commercialized any invention resulting from the hybrid mice.

(*Id.*, ¶ 35.)

UW next alleges that, in 2004, OSU transferred mice containing Dr.

Sendtner's knockout allele to Dr. Kaspar at NCH without requiring a signed UW

MTA. (*Id.*, ¶ 76.) Joint research conducted by OSU and NCH culminated in the

creation of a drug now generating $1 billion in annual sales—none of which accrues

to UW. (*Id.*, ¶¶ 32, 35.) UW alleges that Defendants never executed a UW MTA and

their use of the mice containing Dr. Sendtner's knockout allele was, accordingly,

unauthorized. (*Id.*, ¶¶ 12, 76, 120, 219.)

## II.     PROCEDURAL BACKGROUND

Though in its relative infancy, this case already has a complex procedural

history.

*June 2022*. UW filed the State Action against OSU in Ohio's Court of

Claims.[2] *See Free State of Bavaria,* represented by *The Univ. of Würzburg v. The

Ohio State Univ.*, No. 2022-00495JD (Ohio Ct. Cl., filed June 22, 2022). On the same

day, UW filed this Federal Action against OSU, NCH, and Dr. Kaspar. (*See* ECF

No. 1.) In both cases, UW asserts claims against OSU for breach of the Agency

---

[2] Federal courts may take judicial notice of proceedings in other courts of
record. *See Scarso v. Cuyahoga Cty. Dep't of Human Services*, 917 F.2d 1305 (table),
1990 WL 169645, at *2 (6th Cir. 1990).

Agreement, breach of fiduciary duty, fraud, rescission, unjust enrichment, civil

conspiracy, and declaratory judgment. (*See* State Action, Am. Compl., filed Nov. 11,

2022, ¶¶ 146–214; FAC, ¶¶ 161–221, 231–48.) The Federal Action also asserts

claims against NCH and Dr. Kaspar for tortious interference with a contract, civil

conspiracy, and declaratory judgment. (FAC, ¶¶ 222–48.)

*July 2022*. The Court of Claims stayed the State Action pending the

disposition of this Federal Action. (ECF No. 69-3.) Nonetheless, the Court of Claims

ordered that discovery continue during the stay and that "the parties structure

discovery so that discovery in the federal case also may be used in" the State Action.

(*Id.*)

*October–November 2022*. OSU, NCH, and Dr. Kaspar each moved to dismiss

the claims against them. (ECF Nos. 56, 58, 59.) Though UW did not oppose OSU's

motion, it filed briefs in opposition to the motions to dismiss by NCH and Dr.

Kaspar.

This Court granted OSU's unopposed motion to dismiss the claims brought

against it in this Federal Action. (ECF No. 66.) The Court of Claims then lifted the

State Action stay (State Action, Order Vacating Stay of Proceedings, filed Nov. 14,

2022), and NCH and Dr. Kaspar jointly moved to stay this Federal Action (Mot.).

## III.   MOTION TO STAY PROCEEDINGS

NCH and Dr. Kaspar argue that this Court can (and should) stay these

proceedings under two grants of authority: (1) a court's inherent authority to control

its docket and (2) the abstention doctrine set out in *Colorado River Water*

5

*Conservation Dist. v. United States*, 424 U.S. 800 (1976). (Mot., 1–2.) Because the Court finds it appropriate to stay this Federal Action pursuant to its inherent authority, it need not and does not address abstention under *Colorado River*. *See Colorado River*, 424 U.S. at 813 (making clear that courts should abstain from exercising jurisdiction only in "exceptional circumstances").

### A.     Legal Standard

A district court's power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Accordingly, district courts have wide discretion in evaluating the appropriateness of a stay. *FTC v. EMA Nationwide, Inc.*, 767 F.3d 611, 626–27 (6th Cir. 2014). "The district court's broad discretion includes the power to stay a matter pending resolution of independent proceedings which bear upon the case at hand." *Unroe v. Vilsack*, No. 2:11-CV-592, 2012 WL 3527219, at *1 (S.D. Ohio Aug. 14, 2012) (Sargus, J.) (internal quotations and citations omitted).

The party seeking a stay of proceedings has the burden of establishing both the "pressing need for delay" and "that neither the other party nor the public will suffer harm from entry of the order." *Ohio Envtl. Council v. U.S. Dist. Ct., S. Dist. of Ohio, E. Div.*, 565 F.2d 393, 396 (6th Cir. 1977). In determining whether to grant a stay, "district courts often consider the following factors: the need for a stay, the balance of potential hardship to the parties and the public, and the promotion of judicial economy." *Ferrell v. Wyeth-Ayerst Labs., Inc.*, No. 1:01-CV-447, 2005 WL 2709623, at *1 (S.D. Ohio Oct. 21, 2005) (Beckwith, J.) (further citation omitted).

B.      Analysis

1.      **There is great need for a stay.**

Defendants argue that there is great need for a stay because the State Action will significantly impact, if not moot, issues essential to the claims asserted before this Court. (Mot., 7–9.) They further argue that denying a stay puts the parties at risk of inconsistent adjudication as to key issues. (*Id.*, 2.) The Court agrees on both points.

UW alleges that it had a contract with OSU (the Agency Agreement) that (1) conditioned the use of mice containing Dr. Sendtner's knockout allele on OSU sharing 10% of commercial profits with UW (FAC, ¶ 18); (2) conditioned OSU's use and sharing of mice containing Dr. Sendtner's knockout allele upon execution of a UW MTA (*id.*, ¶¶ 51–52); and (3) made OSU an agent and fiduciary of UW (*id.*, ¶¶ 51, 52, 129). OSU denies the existence of the Agency Agreement and contests the allegations against it. (*See* State Action, Answer to Compl., filed Dec. 7, 2022.) UW's claims in the State Action hinge on the validity and enforceability of the Agency Agreement relating to the use of mice containing Dr. Sendtner's knockout allele. (State Action, Am. Compl., ¶¶ 2, 10, 26–27.)

UW's claims in this Federal Action will also be significantly impacted by a finding that the Agency Agreement is valid—or not. UW concedes as much. (Opp., PAGEID # 1424. *See also* ECF No. 67, PAGEID # 1157.) In particular, UW alleges that Defendants tortiously interfered with the Agency Agreement. (FAC, ¶¶ 222–30.) Tortious interference with a contract requires, *inter alia*, proof of the existence of a contract. *See Atlas Indus. Contractors, LLC v. In2Gro Techs.*, No. 2:19-cv-2705,

2021 WL 1139887, at *10 (S.D. Ohio Mar. 25, 2021) (Morrison, J.). Similarly, UW's civil conspiracy claim alleges that Defendants conspired to tortiously interfere with the Agency Agreement. (FAC, ¶¶ 233–36, 240–43.) In other words, the extent to which Defendants may be found liable in this Federal Action rests on resolution of the issues in the State Action. Accordingly, there is great need for a stay. *See Muench v. Calderhead, Lockemeyer & Peschke L. Off.*, No. C-1-13-514, C-1-12-573, 2014 WL 1512504, at *3–4 (S.D. Ohio Apr. 16, 2014) (Weber, J.) (finding a stay "appropriate" where state court proceedings were "potential[ly] dispositive").

Further, simultaneous adjudication of the State and Federal Actions could yield conflicting interpretations of the parties' contractual obligations. *Close v. Eldo Organic, LLC*, No. 2:22-cv-1630, 2022 WL 3053751, at *4–5 (S.D. Ohio Aug. 2, 2022) (Watson, J.) (citing *Healthcare Co. Ltd, v. Upward Mobility, Inc.*, 784 F. App'x 390, 395–96 (6th Cir. 2019)) (further citations omitted). If a stay is not granted, then both this Court and the Court of Claims will litigate the same issue at the same time, raising the risk of inconsistent results—an undeniably undesirable outcome. *Cf. Romine v. Compuserve Corp.*, 160 F.3d 337, 341 (6th Cir. 1998) (noting, in context of *Colorado River* abstention, that inconsistent rulings have the potential to undermine the legitimacy of the judicial system). This also supports a finding that a stay is needed. *See, e.g.*, *Dealer VSC, Ltd v. Tricor Auto. Grp.-US-Inc.*, No. 2:21-cv-3880, 2022 WL 1951556, at *4 (S.D. Ohio June 6, 2022) (Morrison, J.) (staying where actions in three other courts involved the same core dispute between the same parties).

UW argues for the opposite conclusion, noting that *some* of its claims against Defendants do not rest on the existence of the Agency Agreement. (Opp., PAGEID # 1422–27.) Though that may be true, it does not change the fact that the Court of Claims' findings as to the Agency Agreement would narrow or clarify the issues before this Court. Further, the standard for granting a stay does not require issues pending before the state court to be dispositive of all claims before the Federal Court. *See Muench*, at *3–5 (staying the federal case that relied, only in part, on the outcome of a state case).

### 2.     UW would not be unduly prejudiced by a stay.

Defendants argue that UW would not be prejudiced by a stay because this Federal Action is still in its early stages and no fact discovery has transpired, whereas fact discovery in the State Action is ongoing. (Mot., p. 9 n.4, 10.) The Court agrees.

UW makes two arguments for the opposite conclusion: (1) a stay would prolong disposition of this suit; and (2) a stay would result in inefficient discovery. (Opp., PAGEID # 1428.) Neither argument is availing. UW first postulates that granting a stay would mean its case "would not be decided for years." (Opp., PAGEID # 1427.) But UW is actively litigating the core issues before the Court of Claims, and can see light at the end of this tunnel: the State Action is set for trial in the Summer of 2024. So, while it is true that "a party has a right to a determination of its rights and liabilities without undue delay[,]" *Ohio Envtl. Council,* 565 F.2d at 396, staying this Federal Action would not result in undue delay.

UW next argues that a stay would result in burdensome inefficiencies in discovery. (Opp., PAGEID # 1432.) The Court is not convinced. UW is engaged in discovery in the State Action and has had some opportunity to discover relevant facts from Defendants. Still, no discovery has occurred in this Federal Action. Given the nature of the allegations, much of the State Action discovery will be relevant to the claims in this Federal Action. UW will not need to start 'from scratch' if discovery in this case does not proceed until after the State Action concludes. Finally, despite UW's argument to the contrary, staying this Federal Action will streamline discovery by clarifying the underlying issues in dispute. *See Dealer*, at *3–5; *cf. Perricone v. Unimed Nutritional Servs., Inc.*, No. 3:01-cv-512(CFD), 2002 WL 31075868, at *3 (D. Conn. July 18, 2002) ("Where a case is in the early stages of litigation . . . , a court may avoid duplicative efforts by granting a motion to stay.").

### 3.  Staying this Federal Action promotes judicial economy.

Finally, Defendants contend that staying this case will promote judicial economy by "reduc[ing] the litigation burden for the Court and the parties." (Mot., 17.) For the same reasons the Court finds that a stay is needed (e.g., avoiding simultaneous litigation and the risk of inconsistent results), it finds that a stay also promotes judicial economy. *See Muench*, 2014 WL 1512504, at *4 (S.D. Ohio Apr. 16, 2014) (Weber, J.) (concluding that the strong likelihood that a state case would many legal and factual issues in the federal case supported a stay in the interest of judicial economy). There is an appreciable opportunity for this Court to conserve its resources by imposing a stay.

In opposition, UW argues that a stay would not promote judicial economy because the State Action is not outcome-determinative in the Federal Action. (Opp., PAGEID # 1431 (quoting *Neutron Holdings, Inc., v. Scheinbach*, No. 2:20-cv-5741 (S.D. Ohio Jan. 25, 2021) (Vascura, M.J.)).) UW's argument fails because, again, total dispositive effect is not the standard. This Court has discretion to stay proceedings if it finds that a stay is needed, does not work undue prejudice, and promotes judicial economy. Here, all three factors weigh in favor of a stay.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion to Stay Proceedings (ECF No. 69) is **GRANTED**. This case is **STAYED** pending resolution of the State Action. The parties are **ORDERED** to file a joint written status report upon resolution of the State Action or in six months, whichever is earlier. Defendants' Motions to Dismiss (ECF Nos. 58, 59) are **DENIED without prejudice** to refiling after the stay has been lifted. UW's Motion for Leave to File a Sur-Reply (ECF No. 80) is **DENIED as moot**.

     **IT IS SO ORDERED.**

               /s/ Sarah D. Morrison
               **SARAH D. MORRISON**
               **UNITED STATES DISTRICT JUDGE**